UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| PAVLO MIRELES RIVERA, | ) |
|---|---|
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:17-CV-247 JD |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Pavlo Rivera suffers from a number of mental illnesses that cause him to experience paranoia, severe mood swings, and an explosive personality disorder. He applied for supplemental security income benefits, but an administrative law judge denied his claim, finding that he was able to work notwithstanding his severe impairments. Mr. Rivera seeks review of that decision. For the following reasons, the Court reverses the decision and remands this matter to the Commissioner for further proceedings.

**I. FACTUAL BACKGROUND**

Mr. Rivera suffers from mental illnesses including bipolar disorder, post-traumatic stress disorder, explosive personality disorder, and attention deficit hyperactivity disorder. He experiences severe impulse control problems, with paranoia, mood swings, and thought distortions. He also has a history of substance and alcohol abuse that exacerbate those conditions. His treating psychiatrist opined that Mr. Rivera should not work because it would be unsafe for him to be with other people in a work environment, noting that Mr. Rivera "has severe mood swings, has severe thought distortion and gets paranoid and he feels everyone is attacking him and therefore he 'hits back first.'" (R. 344).

Mr. Rivera applied for supplemental security income benefits, arguing that these conditions rendered him disabled. An ALJ found that Mr. Rivera did have a number of severe impairments, but that he did not meet or equal a listed impairment and that he had the residual functional capacity to perform jobs such as a kitchen helper or house cleaner. The ALJ thus found that Mr. Rivera did not qualify as disabled. The Appeals Council denied Mr. Rivera's request for review, making the ALJ's decision the final decision of the Commissioner. Mr. Rivera therefore filed this action seeking review of that decision.

## II.  STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence"

before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. DISCUSSION

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Mr. Rivera offers multiple arguments for why the ALJ's decision was erroneous, arguing that the ALJ failed to properly consider his mental limitations at step three, and that at step five, she failed to properly consider the opinions of treating and consulting physicians and other sources, erred in her credibility analysis, and failed to account for all of his limitations in his residual functional capacity. The Court need not address all of those arguments, as it finds that the ALJ did not provide a sufficient reason for discounting the opinions of one of Mr. Rivera's treating physicians, Dr. Charkatz. That error alone requires remand, and Mr. Rivera does not request an outright award of benefits (nor is the record so one-sided as to warrant that relief), so the Court reverses and remands on that basis. The parties are free take up any remaining issues on remand.

"A treating physician's opinion is entitled to controlling weight if it is supported by medical findings and consistent with substantial evidence in the record."[1] *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013). An ALJ is not required to accept a treating physician's opinion, but an "ALJ who declines to give controlling weight to the opinion of a treating physician must offer 'good reasons' that are 'sufficiently specific' in explaining what weight, if any, she assigned it." *Eakin v. Astrue*, 432 F. App'x 607, 612 (7th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)); *see also Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

Dr. Charkatz is a psychiatrist who began seeing Mr. Rivera as his treating physician in October 2013. In his treatment notes from Mr. Rivera's first session in October 2013, Dr. Charkatz opined that Mr. Rivera "should not go to work" because it would not be "safe for him to be with other people at a job." (R. 344). Dr. Charkatz reiterated that opinion in his notes from the next session in January 2014, stating that "I do not think he should be working," and also noting Mr. Rivera's severe mood swings, severe thought distortions, and paranoia. (R. 374–75). The ALJ gave these opinions "little weight," (R. 27–28), but the explanation she offered for doing so was flawed in multiple respects.

First, the ALJ stated that Dr. Charkatz's opinions were "quite conclusory." (R. 28). Mr. Rivera argues that, if the ALJ believed the opinions were too conclusory to credit, she should have contacted Dr. Charkatz to ascertain their basis. The Court agrees that the ALJ erred in discounting the opinions as conclusory, but the problem is more basic, in that the record does not support the characterization of the opinions as conclusory. Dr. Charkatz did not state only that Mr. Rivera was disabled or that he should not work—he stated that Mr. Rivera should not work

---

[1] The Commissioner has since rescinded the treating physician rule, but that took effect after Mr. Rivera's claim.

because "I do not feel it is safe for him to be with other people at a job at the present time." (R. 344). The rest of the treatment record in which Dr. Charkatz first made that statement provides ample explanation for that opinion. In recounting Mr. Rivera's history, Dr. Charkatz wrote:

> The patient came up the hard way. He was in prison at the age of 15 and was there until about 20. There he saw all kinds of terrible things including someone being shot with his brains hanging out in a car and all kinds of problems. In fact right now, there are charges against him for hitting someone at work. . . . Today the patient says he still cannot cope with stress, his temper is bad . . . . He does say his temper is short and he . . . does lose it sometimes with very little warning.

(R. 343). For his "Assessment," Dr. Charkatz wrote: "This patient has severe mood swings, has severe thought distortion and gets paranoid and he feels everyone is attacking him and therefore he 'hits back first.'" (R. 344). That background and assessment amply explain why Dr. Charkatz opined that Mr. Rivera should not be working. Dr. Charkatz's opinion at the next visit contains a similar explanation. Dr. Charkatz noted that Mr. Rivera "has an explosive personality" and "still has a bad temper," even though he was "not acting out *as* severely." (R. 374 (emphasis added)). And for his assessment, Dr. Charkatz noted that Mr. Rivera "has severe mood swings, has severe though distortions and can get paranoid." (R. 375). Only by ignoring that context could the ALJ discount as "conclusory" the opinions that it would be unsafe for Mr. Rivera to be at work.

The ALJ also discounted Dr. Charkatz's opinions because, in a later treatment note, Dr. Charkatz noted that Mr. Rivera's explosive personality was "under control." (R. 27). Again, however, the ALJ appears to have taken that statement out of context. Dr. Charkatz was not suggesting that Mr. Rivera's condition had resolved, but was merely referring to its episodic nature. What Dr. Charkatz wrote was:

> The patient is a little paranoid but that is not unusual for him. His explosive disorder is *right now* under control. He is calm. He does have *intermittent* severe mood swings with thought distortion *but not right now*. He does get quite angry and that is when he loses control.

(R. 405 (emphasis added)).

6

In its full context, the statement that Mr. Rivera's explosive personality was "under control" does not contradict Dr. Charkatz's earlier opinions or suggest that Mr. Rivera was no longer limited in those respects. Mr. Rivera was still experiencing paranoia, an explosive personality, mood swings, and anger; all Dr. Charkatz noted was that he was not experiencing those things *at that time*. In fact, in his treatment note from the next visit,[2] Dr. Charkatz noted that Mr. Rivera "went back to jail shortly after I saw him as he got into a fight with the police." (R. 399). Accordingly, this was not a valid reason to discount Dr. Charkatz's opinions either, at least without acknowledging and reconciling it with the episodic and "intermittent" nature of Mr. Rivera's condition. *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006) ("[The ALJ] thought the medical witnesses had contradicted themselves when they said the plaintiff's mental illness was severe yet observed that she was behaving pretty normally during her office visits. There was no contradiction; bipolar disorder is episodic."); *Phillips v. Astrue*, 413 F. App'x 878, 886 (7th Cir. 2010) ("The ALJ's assessment of the medical record also demonstrates a misunderstanding about the nature of mental illness. . . . Many mental illnesses are characterized by 'good days and bad days,' rapid fluctuations in mood, or recurrent cycles of waxing and waning symptoms.").

The ALJ also stated that Dr. Charkatz's opinions were contradicted by a later treatment note in which Dr. Charkatz stated, "I see no reason why [Mr. Rivera] cannot go to school at this time provided he keeps his hands to himself, does not get into fights and does not drink." (R. 399). That's a huge "provided," though. Mr. Rivera could perhaps go to work, too, *provided* that

---

[2] The treatment note from the previous visit likewise indicated that Mr. Rivera was "keeping himself under control," but it further noted that Mr. Rivera "still has his bad temper" and "gets a little paranoid," and that he had recently gotten in a fight at the grocery store. (R. 409). And the assessment from that visit again indicated that Mr. Rivera has "intermittent" severe moods swings. (R. 410).

7

he controls his temper and does not get into fights. The question before the ALJ was whether Mr. Rivera would be able to do so sufficiently to maintain consistent employment. Yet, prior to that visit, Mr. Rivera had gone to jail for getting in a fight with a police officer. *Id.* And just a couple months before that, he had been in a fight at the grocery store.[3] (R. 409). A statement that Mr. Rivera could go to school provided that he does not get into fights is thus not a strong basis upon which to discount Dr. Charkatz's opinion that Mr. Rivera could not work.

In its response, the Commissioner does not acknowledge or respond to any of Mr. Rivera's arguments relative to Dr. Charkatz's opinions; its analysis consists solely of reciting the ALJ's opinion, without making any attempt to address Mr. Rivera's criticisms. Thus, in light of the issues just discussed, and absent any defense of the ALJ's opinion by the Commissioner, the Court finds that the ALJ failed to offer adequate reasons for discounting Dr. Charkatz's opinions. If accepted, Dr. Charkatz's opinions would support limitations on Mr. Rivera's ability to work beyond those that the ALJ adopted, so the error is not harmless. The Court therefore remands this action to the Commissioner for further proceedings.

## IV. CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to enter judgment accordingly.

SO ORDERED.

ENTERED: July 30, 2018

/s/ JON E. DEGUILIO
Judge
United States District Court

---

[3] Those incidents also contradict the ALJ's statement that Dr. Charkatz's opinion was "not supported by observed or reported behavior." (R. 28).